In re McCRAY'S ESTATE.

No. 73479.

United States District Court
District of Columbia.

Feb. 28, 1951.

John E. Powell, Washington, D. C., for executor-petitioner.

Henry E. Manghum, Ralph A. Ricketts, Washington, D. C., for respondent First Church of Christ Scientist.

Thomas J. Lynch, Washington, D. C., guardian ad litem for Donald A. and Wilson P. McCray 3rd.

Richard B. Kelley, Washington, D. C., for H. F. Humphries, S. R. Rutherford and Clara E. Randall.

TAMM, District Judge.

This case is before the Court on a motion by the Executor for summary judgment.

The issue in the case is whether legacies to be paid from the proceeds of the sale of certain realty were adeemed, and this turns on the further question—were the legacies specific or demonstrative?

The decedent, Clara McCray, died on May 25, 1949, leaving a will which had been executed on May 25, 1944. This will was duly admitted to probate. The second, third and fourth paragraphs of the will provided as follows:

"*Second*: In the event that I predecease my beloved husband, Wilson F. McCray, Sr., and he should continue disabled, it is my sincere desire, and I therefore request, that my beloved sister, Mrs. Annie Humphries Warren, who is now residing at 1712 Irving St., N. W., Washington, D. C., make arrangements for his care during the remainder of his life, using for that purpose moneys which may be derived from the renting or leasing of my real property known as 6610 Braeburn Parkway, Town of Bethesda, Montgomery County, Maryland, and described as follows:

" 'Lot numbered twenty-one (21) in Block numbered Five (5) in a resubdivision of Lots numbered Four (4) and Five (5) in Block numbered Five (5) in the subdivision known as "Bannockburn Heights", as per plat of said resubdivision recorded in Plat Book 19, Folio 1171, one of the Land Records of said Montgomery County, Maryland.'

"*Third*: In the event that I predecease my said sister, I give and devise the real property described in Paragraph Second of this will unto my said sister, Mrs. Anne Humphries Warren, subject, however, to a life estate in my said husband if he survive me.

"*Fourth*: In the event that my said husband shall predecease me, then I give and devise the aforesaid real property described in Paragraph Second of this will unto my said sister, Mrs. Annie Humphries Warren, absolutely."

Paragraph five of the will provided that: "In the event that both my said husband and my sister predecease me then I direct that the aforesaid real property be sold and the proceeds realized therefrom be distributed as follows: * * *"

The will then named eight legatees, six of whom were to receive a one-seventh interest, and the other two were each to receive one-fourteenth. (By the "aforesaid real property", the testatrix had reference to the piece of real property described in paragraph two of her will). The sister of the testatrix was to have been residuary legatee. The husband of the testatrix died on July 2, 1944, less than two months after the making of the will, and her sister died on September 30, 1946. Both died without issue.

In 1945, that is, after the death of the testatrix' husband but before the death of the sister, the testatrix sold this Bethesda real property and invested the proceeds in various securities. She later sold and purchased other securities with the proceeds received from the sale of the real property. She also used part of the proceeds for her own purposes.

The testatrix received $8,988.83 from the sale of the real property in Bethesda. This money was used from time to time for the purchase of various securities, and these were in turn sold, and the proceeds reinvested. From the time of the sale until her death, the testatrix spent $854.44 of these funds for her own purposes. The present estate consists of some $6000 in securities, the proceeds of a $2500 insurance policy, and a quantity of personal property and effects.

256

The basic question to be resolved is whether the legacies set forth in paragraph five of the will were adeemed. Whether these legacies were adeemed is determined fundamentally by the nature of the legacy. If the legacies were demonstrative, the sale of the real property and investment and reinvestment of the proceeds would not constitue an ademption, and, consequently, paragraph five of the will would stand. On the other hand, if the legacies in paragraph five are specific, the sale or transfer of the property subject to the specific, legacies would constitute an ademption thereof, and the proceeds of the sale of the realty involved herein would be distributable under the provision of the intestate succession laws of this jurisdiction.

There is a conflict among the various jurisdictions on the question of whether a gift of the proceeds of property is adeemed by receipt by the testator of the proceeds and consequent dealings and transactions with such proceeds. 165 A.L.R. 1032, et ff. Some courts which hold this type of legacy to be specific still hold that the legacy is not adeemed by subsequent transactions and dealings by the testator. 165 A.L.R. 1034.

■ The Supreme Court in Kenaday v. Sinnott, 179 U.S. 606, 21 S.Ct. 233, 237, 45 L.Ed. 339, has briefly outlined the doctrine of ademption thus: " * * * Without going into refinements in respect of the definition of the word 'ademption,' it may be said to be the extinction or withdrawal of a legacy in consequence of some act of the testator equivalent to its revocation, or clearly indicative of an intention to revoke. The satisfaction of a general legacy depends on the intention of the testator as inferred from his acts, but the ademption of a specific legacy is effected by the extinction of the thing or fund bequeathed, and the intention that the legacy should fail is presumed. At least a different intention in that regard which is not expressed will not be implied, although the intention which is expressed relates to something which has ceased to exist."

■ Testatorial intention is determinative of the type of legacy designated. As the Court of Appeals held in Plant v. Donaldson, 39 App.D.C. 162, 165: "Whether a legacy is to be treated as demonstrative, or one dependent exclusively upon a particular estate or fund for payment, is a question to be determined according to what may have been the general intention of the testator expressed in the will; and that a legacy will not be construed to be specific unless the intention to make it such clearly appears."

■ The Court of Appeals for the District of Columbia laid down in an early decision the differences between a specific and a demonstrative legacy: "A specific legacy is the bequest of a particular thing, or a specified part of a testator's property, distinguished from all others of the same kind. * * * If the language of the will indicates, not the gift of a specified article, or part of the estate, to the extent or value stated, but its designation only, as a certain interest or fund from which the bequest of money, or amount of value, shall be primarily paid or satisfied, it becomes a demonstrative legacy." Douglass v. Douglass, 1898, 13 App.D.C. 21, 26, 27.

Th e fifth paragraph of the will directed that "the aforesaid real property be sold and the proceeds realized therefrom" be distributed as thereafter directed. Obviously the intent of the testatrix at the time the will was written was to retain this real property. Shortly thereafter, however, her husband died. That the testatrix' first concern was for the welfare of her husband in the event she predeceased him is established by the second paragraph of the will. In the year following her husband's death, the testatrix sold the real property which was to provide for her husband's care "during the remainder of his life" and invested the proceeds of this sale in various securities. Later she disposed of three government bonds purchased with a portion of the proceeds of the sale of the real property and utilized the proceeds for her own purposes. On another occasion she paid from the proceeds of the sale of the real property $369.89 to the Treasurer of the United States on account of her Civil Service Retirement and Disability Fund.

■ The Court holds that the legacies contained in paragraph five of the will were specific and that they were, therefore, adeemed and that, consequently, the proceeds of the sale of the real property which are in the hands of the Executor must be distributed according to the intestate laws of this jurisdiction.

■ The Court cannot make a will, nor can it revise the language of the testatrix. Nor may it impute a meaning which is contrary to the expressed intention of the testatrix. In the language of Plant v. Donaldson, supra, 39 App.D.C. at page 166: "We can find nothing in that language from which we can infer an intention that the legatees shall be paid certain sums at all events, with the designation merely of the proceeds of the land as a special fund primarily charged with such payments. The plainly expressed intention is that the real estate, devised in trust, to the executor for the particular purpose, shall be sold by him, and the proceeds of such sale divided by him in the manner provided."

To hold that there was created in paragraph five of the will of the testatrix some kind of legacy other than a specific legacy would be, in the Court's opinion, to disregard her intentions as manifested by the provisions of the will and the testatrix' own conduct and actions in dealing with the property involved.

■ Plant v. Donaldson, supra, clearly holds that if the legacy is specific, the subsequent sale by the testatrix during her lifetime of the real property from the proceeds of which the legacy was made payable constitutes an ademption. That case is also authority for the proposition that the legacies set forth in paragraph five of the will were to be specific legacies.

■ While it is also true that there is a presumption against intestacy, such does not empower the Court to direct the disposition of the property of the testatrix according to what the Court thinks the testatrix should have done, or would have done, had she been fully aware of the legal consequences of certain actions and events which took place. Conjecture may not be substituted for expressed intention. Kaiser v. Brandenburg, 1900, 16 App.D.C. 310, 317.

The Court finds basic factual differences which distinguish this case from Kenaday v. Sinnott, 1900, 179 U.S. 606, 21 S.Ct. 233, 45 L.Ed. 339.